IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18 CR 744 |
| | ) | |
| | ) | |
| Eleazar Hernandez-Perdomo | ) | |

Memorandum Opinion and Order

The indictment in this case charges Eleazar Hernandez-Perdomo with illegal reentry subsequent to deportation or removal in violation of 8 U.S.C. § 1326(a). Defendant moves to dismiss the indictment on the ground that the removal order underlying this charge is invalid under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). For the reasons that follow, his motion is denied.

I.

The following facts are undisputed.[1] Defendant was taken into Immigration and Customs Enforcement ("ICE") custody on June 7, 2010, and was personally served with a Notice to Appear ("NTA") in immigration court for removal proceedings. The NTA did not indicate the date or time defendant's appearance was required. Instead, it

---

[1] Both parties have submitted documents relating to defendant's immigration proceedings, and neither has raised objections to any document or has requested an evidentiary hearing in connection with defendant's motion to dismiss. Accordingly, I assume the facts reflected in these documents are correct unless otherwise noted.

ordered defendant to appear on "a date to be set" at "a time to be set." The NTA identified defendant's address as 624 Sheridan Rd Apt 3B in Highwood, Illinois.[2]

Defendant was released from ICE custody on his own recognizance. The conditions specified in his Order of Release required that he report in person to a deportation officer on September 7, 2010 at 10:00. The Order of Release further stated: "You must not change your place of residence without first securing written permission from the immigration officer listed above." Defendant states in his motion that he reported to the immigration officer as required on September 7, 2010, at which time he completed and returned to the officer a change-of-address form identifying his new residence on Owentsia Avenue in Highland Park, Illinois.

On August 6, 2010, the Executive Office for Immigration Review ("EOIR") sent defendant a Notice of Hearing in Removal Proceedings in Immigration Court scheduled for 9:00 a.m. on January 3, 2012. This notice was sent to defendant's Sheridan Road address and was returned as undeliverable. On January 27, 2011, the EOIR sent defendant another Notice of Hearing in Removal Proceedings scheduled for 1:00 p.m. on March 2, 2011. This notice was also

---

[2] Although defendant's motion identifies this street address as located in Highland Park, Illinois, this appears to be a scrivener's error, as both sides' exhibits confirm that this address is actually in the neighboring town of Highwood, Illinois.

sent to defendant's Sheridan Road address and was also returned as undeliverable. Unaware of the March 2, 2011, hearing, defendant failed to appear. The Immigration Judge conducted the removal hearing in defendant's absence; found him removable based on the government's evidence; and ordered him removed to Mexico.

On June 2, 2011, defendant was arrested at his Owentsia Avenue address and placed in ICE custody. He was removed to Mexico eight days later, on June 10, 2011. On August 21, 2018, defendant was found inside the United States after entering the country without inspection. The present charge followed.

## II.

8 U.S.C. § 1326(a) "forbids an alien who once was deported to return to the United States without special permission." *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998). "Since a prior removal is necessary for a conviction under § 1326, an alien may collaterally attack the underlying removal pursuant to the due process clause." *United States v. Baptist*, 759 F.3d 690, 695 (7th Cir. 2014) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987)). A successful collateral attack requires the defendant to demonstrate that "(1) he exhausted all administrative remedies that were available to him; (2) the deportation proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was 'fundamentally unfair.'" *Id.* (quoting 8 U.S.C. § 1326(d)). All

three of these requirements must be satisfied. *Id*. ("While we have yet to expressly state that all three requirements must be met before an alien can successfully collaterally attack a prior removal, we have implied as much."). Defendant's primary argument for dismissal does not confront these requirements but urges me to hold that dismissal is warranted on the ground that *Pereira* invalidates the underlying proceedings and removal order *per se*. Secondarily, defendant argues that he is excused from the first two requirements of § 1326(d), and that the immigration court's removal order—which was entered *in absentia* and, in defendant's view, without authority—satisfies the third requirement.

In *Pereira*, a noncitizen[3] was served with an NTA that did not specify the time and place of his removal proceedings. The Supreme Court held that an NTA that fails to specify the time and place of a removal hearing does not trigger the "stop-time rule" for purposes of cancellation of removal. *Herrera-Garcia v. Barr*, --- F.3d ---, 2019 WL 1236342, at *2 (7th Cir. Mar. 18, 2019). The Court concluded that the text of the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. ("INA"), the statutory context, and common sense "all lead inescapably and unambiguously" to the conclusion that an NTA that does not include time and place

---

[3] I follow the *Pereira* Court's lead and refer to any person who is not a citizen or national of the United States as a "noncitizen."

information does not meet the statutory definition of NTA found at 8 U.S.C. § 1229(a). 138 S. Ct. at 2110.

The "narrow question" at issue in *Pereira* was situated at "the intersection" of § 1229(a), which establishes the substantive requirements of the notice that must be given to noncitizens in removal proceedings, and § 1229b(d)(1), which relates to the eligibility of certain noncitizens for the discretionary relief of cancellation of removal.[4] The Court examined the statutory text and concluded that § 1229(a) "speak[s] in definitional terms" regarding the substantive contents of an NTA, while § 1229b(d)(1) "connects" the stop-time rule governing cancellation of removal to that definition. *Id*. at 2117. The Court observed that under § 1229b(d)(1), "'any period of...continuous physical presence' is 'deemed to end...when the alien is served a notice to appear under section 1229(a),'" and held that "the word 'under' provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by § 1229(a)." *Id*.

There is no dispute that the NTA defendant received lacked the date and time information that *Pereira* requires. In defendant's

---

[4] The INA provides that "[n]onpermanent residents ... who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." *Pereira*, 138 S. Ct. at 2109 (citing 8 U.S.C. § 1229b(b)(1)). The "stop-time" rule establishes when the period of "continuous physical presence in the United States" is deemed to end. *Id*. at 2110.

5

view, the legal effect of this defect is that the immigration court lacked jurisdiction to conduct his removal proceedings, which in turn meant that it had no authority to issue the removal order on which the government's § 1326(a) charge is based. Because the removal order was entered without the immigration court's jurisdiction, defendant continues, his collateral attack of the order need not satisfy the administrative exhaustion or judicial review requirements of § 1326(d). And because the immigration court ordered him removed in absentia and without notice, it satisfies the fundamental unfairness requirement. The government responds that *Pereira* does not apply outside the context of the "stop-time" rule, much less should it be interpreted as calling the immigration court's jurisdiction into question. Furthermore, the government insists, *Pereira* does not relieve defendant of his burden under § 1326(d), which he has not satisfied.

A number of courts have examined these arguments in the months since *Pereira* was handed down. Some, emphasizing the Court's repeated reference to the narrowness of its holding, have explicitly limited *Pereira* to the stop-time context. *See, e.g., United States v. Manriquez-Alvarado*, No. 18-cr-200450JES-JEH, 2019 WL 1292680, at *2-*3 (S.D. Ill., Mar. 20, 2019); *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018). At the other end of the spectrum, a handful of courts have embraced the sweeping application defendant urges here and

6

have concluded that a removal order entered in proceedings in which the NTA lacked time-and-place information is void *per se* and fails to trigger the immigration court's jurisdiction. *See United States v. Quijada-Gomez,* --- F. Supp. 3d---, 2018 WL 6706680 (E.D. Wa. 2018) (dismissing indictment because immigration court's order was void *ab initio*); *United States v. Erazo-Diaz*, 353 F. Supp. 3d 867 (D. Ariz. 2018) (dismissing indictment because immigration court proceedings were "void" due to defective NTA); *United States v. Virgen-Ponce* 320 F. Supp. 3d 1164 (E.D. Wash. 2018) (same); *United States v. Tzul*, 345 F. Supp. 3d 785 (S.D. Tex. 2018) (same); *United States v. Lopez-Urgel*, 351 F.Supp.3d 978 (W.D. Tex. 2018) (same); *United States v. Ortiz*, 347 F.Supp.3d 402, 2018 WL 6012390 (D.N.D. 2018) (same); *United States v. Alfredo-Valladares*, No. 1:17-CR-156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018) (same) *United States v. Pedroza-Rocha*, No. 3:18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018) (same).

An emerging majority of district courts, however, have struck a balance between these poles. Numerous courts have either held or assumed that *Pereira* applies in the illegal reentry context, but have nevertheless required defendants seeking dismissal of a § 1326(a) indictment to establish each element of § 1326(d) with facts that go beyond the issuance of a defective NTA. *See, e.g., See United States v. Barbosa*, ---F. Supp. 3d---2019 WL 1300858, at *3 (D. Mass. Mar. 21, 2019) ("Regardless of whether the immigration

7

court had jurisdiction over Barbosa's removal proceedings, he must make the required showing under 8 U.S.C. § 1326(d) to collaterally attack his removal order."); *United States v. Rangel-Rodriguez*, ---F. Supp. 3d---, 2019 WL 556725 (N.D. Ill. Feb. 12, 2019) (Kennelly, J.) (holding that *Pereira*'s construction of § 1229(a) "applies" but declining to dismiss the indictment based on defendant's failure to satisfy § 1326(d)); *United States v. Zapata-Cortinas*, 351 F. Supp. 3d 1006 (W.D. Tex. Nov. 2018) (same, noting that "a removal order that suffers jurisdictional defects may serve as the basis for a § 1326(a) prosecution"); *United States v. Hernandez-Lopez*, No 5:18-CR-625(1)-DAE, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018)(same); *United States v. Sandoval-Cordero*, 342 F. Supp. 3d 722 (W.D. Tex. 2018); *United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522 (D. Kan. Oct. 15, 2018); *United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018) (same); *United States v. Mendoza-Sanchez*, No. 17-cr-189-JD, 2018 WL 5816346 (D.N.H. Nov. 5, 2018) (same); *United States v. Ramirez*, 2018 WL 6037540 (W.D. Va. Nov. 16, 2018) (same).

The growing consensus among courts, moreover, is that *Pereira* does not undermine the jurisdiction of the immigration court in each case where the NTA fails to include time-and-place information. The Fourth, Sixth, and Ninth Circuits, as well as the BIA, have all reached this conclusion. *See United States v. Perez-Arellano*, ---F. App'x.---, 2018 WL 6617703, at *3 (4th Cir. Dec.

8

17, 2018); *Karingithi v. Whitaker*, 913 F.3d 1158, 1159-60 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313-14 (6th Cir. 2018); and *Matter of Bermudez Cota*, 27 I. & N. Dec. 441 (BIA 2018) (same). As the Ninth Circuit explained, "the regulations, not § 1229(a), define when jurisdiction vests." *Karingithi* 913 F.3d at 1159-60 (9th Cir. 2019) (quoting 8 C.F.R. § 1003.14(a)("[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court") (original alteration) and discussing related provisions of §§ 1003.13, 1003.15(b) and 1003.18(b)).

District courts that have examined the issue in the context of illegal reentry charges have generally fallen in line with these decisions. *United States v. Cortez*, 2019 WL 1112686, at *4-*5 (S.D. Tex. Mar. 11, 2019); *United States v. Gaeta-Galvez*, No. 18-CR-134-JPS, 2019 WL 989766, at *3-*4 (E.D. Wis. Mar. 1, 2019) (denying motion to dismiss § 1326(a) indictment asserting that immigration court lacked jurisdiction because NTA did not satisfy *Pereira*); *United States v. Ramirez-Cruz*, No. 2:18-CR-206-FtM-38MRM, 2019 WL 952313, at *3 (M.D. Fla. Feb. 27, 2019) (same, observing that "[n]either *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court"); *United States v. Hernandez-Aguilar*, No. 5:18-CR-137-FL-1, 2019 WL 456172 (E.D.N.C. Feb. 5, 2019); *United States v. Torres-Castelan*, No. 1:18-CR-354-LY, 2019 WL 361684, at *5 (W.D.

9

Tex. Jan. 29, 2019) (same); *United States v. Saravia-Chavez*, No. 3:18-CR-16-NKM, 2018 WL 5974302 (W.D. Va. Nov. 14, 2018).[5] The Seventh Circuit has not weighed in on the issue post-*Pereira*, although its decision in *Dababneh v. Gonzales*, 471 F.3d 806 (7th Cir. 2006), is consistent with the emerging trend. *See* 471 F.3d at 808-09 (rejecting challenge to immigration court's jurisdiction based on NTA's failure to include date and time information because the government provided that information in a separate document and satisfied the jurisdictional requirements of 8 C.F.R. § 1003.14(a)).

Defendant insists that *Karingithi* and its progeny are not dispositive of the jurisdictional question, emphasizing that the Ninth Circuit expressly declined to decide "whether jurisdiction would have vested if [the noncitizen] had not received [the time and date of her removal proceedings] in a timely fashion." 913 F.3d at 1162. *United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018) (rejecting argument that immigration court lacked jurisdiction over removal proceedings but granting motion to dismiss indictment based on meritorious collateral attack under § 1326(d)). Ultimately, however, I need not decide the thorny jurisdictional question because even a

---

[5] Some of the decisions cited in this paragraph and the preceding one are unpublished, and none is controlling, but they are examples of this analytical trend.

jurisdictional defect does not automatically entitle defendant to dismissal. Indeed, as Judge Kennelly explained in *Rangel-Rodriguez*, a defect in subject matter jurisdiction is not fatal so long as the defendant had a meaningful opportunity to challenge the immigration court's subject jurisdiction through collateral proceedings, and that is precisely what Congress created when it enacted § 1326(d). *Id*. at 2019 WL 556725, at *6. In short, regardless of *Pereira*'s effect on the validity of the underlying removal order, defendant must satisfy each element of § 1326(d) to win dismissal of the indictment.

Like the defendant in *Rangel-Rodriguez*, defendant argues that the administrative exhaustion and judicial review requirements should be waived because pursuing administrative remedies would have been futile and because the underlying removal order was void. But as the *Rangel-Rodriguez* court pointed out, these arguments are foreclosed by *United States v. Larios-Buentello*, 807 F.3d 176, 177 (7th Cir. 2015). *Medoza-Lopez*, which established only that due process requires "*some* meaningful review of the administrative proceeding," 481 U.S. at 838 (original emphasis), is not to the contrary. Nothing about the Court's holding in that case suggests that a defendant who challenges the validity of the immigration proceedings is excused from invoking the procedures Congress established for collaterally attacking a removal order that serves

as a basis for a § 1326(a) charge. *See Rangel-Rodriguez*, 2019 WL 556725, at \*6-\*7.

Finally, defendant has not established that the entry of the removal order was "fundamentally unfair" as required by § 1326(d)(3). Defendant argues that his due process rights were violated because the order was entered without notice and *in absentia*, and that he was prejudiced because *Pereira* mandates dismissal of the proceedings on jurisdictional grounds. While it is true that a noncitizen "cannot be ordered removed from the United States without notice and an opportunity to be heard," *Smykiene v. Holder*, 707 F.3d 785, 787 (7th Cir. 2013), defendant could have moved to reopen his proceedings on that ground. *Id.* ("[a]n order of removal *in absentia* 'may be rescinded...upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1)...of section 1229(a).'"). Having failed to invoke that relief, defendant cannot now be heard to challenge the order on due process grounds. *See Larios-Buentello*, 807 F.3d at 177.

Nor has defendant shown that he was prejudiced by the lack of notice. To show prejudice, defendant must establish that "judicial review would have yielded him relief from deportation." *United States. v. Arita-Campos*, 607 F.3d 487, 493 (7th Cir. 2010) (internal quotation marks and citation omitted). Unlike the defendant in *United States v. Ramos-Delcid*, No. 3:18-cr-00020,

2018 WL 5833081 (W.D. Va. Nov. 7, 2018), who raised "a reasonable probability" that had he been informed of the date and time of his proceedings, he would have been able to establish his entitlement to voluntary departure, *id.* at *8, defendant offers no substantive basis other than lack of notice for concluding that he was entitled to relief from deportation. But this argument is circular. Had defendant received adequate notice and attended his removal proceedings, then the immigration court's jurisdiction would have been secure notwithstanding the *Pereira* error for the reasons explained in *Karingithi*, and defendant would not have been entitled to dismissal on that basis.

### III.

For the foregoing reasons, defendant's motion to dismiss the indictment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 28, 2019